UNITED STATES DISTRICT COURT
Southern District of West Virginia

IN THE MATTER OF THE SEARCH OF
HCS LLC/ HAGER CONSTRUCTION LLC
5315 Cherry Lawn Road
Huntington, WV 25705

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT

STATE OF WEST VIRGINIA

COUNTY OF CABELL, to-wit:

I, Special Agent Benjamin M. LaBuz, being first duly sworn, do hereby depose and state as follows:

1. I am a Special Agent with the Department of Veterans Affairs ("VA"), Office of Inspector General ("OIG"), Criminal Investigation Division ("CID") and am assigned to the Mid-Atlantic Field Office, Washington, D.C. I have been in my current position since June 2007. In my current position with the VA/OIG, I investigate violations of federal laws including Title 18 United States Code § 1001, False Statements. I am a federal law enforcement officer authorized to request and execute search warrants under Rule 41 of the Federal Rules of Criminal Procedure.

2. Agents employed by the VA/OIG are conducting this investigation with the assistance of VA Contract Specialists. The VA is a department of the executive branch of the Government of the United States. Statements contained in this affidavit are based, in part, on my experience and training as a Special Agent with the VA/OIG

1

as well as information provided to me by other officers and employees with the VA. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish probable cause to believe that Ruford HAGER; Michael HAGER; Robert GOLD (aka Bruce Gold); and HCS LLC, violated Title 18 United States Code § 1001.

3. This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing a search of the offices of HCS LLC and HAGER CONSTRUCTION LLC (hereinafter, "HAGER CONSTRUCTION"), 5315 Cherry Lawn Road, Huntington, WV 25705, described more fully in Attachment A. (Note: HCS LLC and HAGER CONSTRUCTION are located in the same building, which interchangeably uses two addresses: 5192 Braley Road, Huntington, WV 25705 and 5315 Cherry Lawn Road, Huntington, WV 25705. HAGER CONSTRUCTION has also used the address of 5317 Cherry Lawn Drive, Huntington, WV 25705.)

## Relevant Laws

4. Title 18 United States Code § 1001 provides that it is a violation of federal law to knowingly and willfully make any materially false, fictitious, or fraudulent statement or representation knowing such claim to be false, fictitious, or fraudulent.

2

## Summary for Basis for Search Warrant

5. Based upon the information provided in this affidavit, this affiant believes that probable cause exists that HCS LLC and its employees violated Title 18 United States Code § 1001 on all occasions when HCS LLC falsely certified to the United States that it qualified as a Service-Disabled Veteran-Owned Small Business ("SDVOSB") in connection with its efforts to obtain contracts with the VA that were SDVOSB set-aside contracts.

## Veterans Affairs Service-Disabled Veterans Set-Aside Contracts

6. The VA utilizes a wide-range of procurement methods to solicit contracted work with companies. One such procurement method that is currently being utilized by the VA is the SDVOSB set-aside, which permits procuring agencies to set acquisitions aside for exclusive competition among SDVOSB concerns and provides authority to make sole source awards to SDVOSB concerns if certain conditions are met.

7. In order to be eligible for SDVOSB set-aside contracts, a SDVOSB must meet the following criteria:
   a. The Service Disabled Veteran ("SDV") owner must have a service-connected disability that has been determined by the VA or the Department of Defense.
   b. The SDVOSB must be small under the North American Industry Classification System ("NAICS") code assigned to the procurement.

3

    c. The SDV owner must unconditionally own 51% of the SDVOSB.

    d. The SDV owner must control the management and daily operations of the SDVOSB.

    e. The SDV must hold the highest officer position in the SDVOSB.

8. Further, in order to satisfy the "control" element of the SDVOSB requirement, SDVOSB concerns must meet the following:

    a. The management and daily business operations of the concern must be controlled by one or more SDVs.

    b. Control by one or more SDVs means that both the long-term decision making and the day-to-day management and administration of the business operations must be conducted by one or more SDVs.

    c. The management and daily business operations of which are controlled by one or more SDVs or, in the case of a SDV with permanent and severe disability, the spouse of permanent caregiver of such veteran.

    d. SDV means a veteran with a disability that is service-connected.

    e. Ownership must be direct. Ownership by one or more SDVs must be direct ownership.

    f. A SDVOSB concern owned principally by another business entity that is in turn owned and controlled by one or more SDVs does not meet this requirement.

9. The VA requires companies interested in contracts to register on several government websites, to include:

    a. Vet Biz Registry ("Vet Biz") is an online system where companies register their small business with the VA. Vet Biz allows contracting officers, as well as

4

    private citizens, to conduct internet searches for small businesses.

b. Central Contractor Registration ("CCR") is the official, on-line registrant database for the U.S. Federal Government. CCR collects, validates, stores and disseminates data in support of agency acquisition and award missions. Contractors who wish to bid for VA contracts are required to set up an account with CCR that is accessed with a username and password.

c. Online Certifications and Representations Application ("ORCA") is an e-Government initiative that is operated and managed by the General Services Administration, an independent agency within the executive branch of the Government of the United States. ORCA uses information that has been entered into CCR by proposed contractors. The contractors then review the ORCA file and make several certifications. One of those certifications that can be made through ORCA is that the relevant small business concern qualifies as an SDVOSB. Prior to October 1, 2010, Contracting Officers verified that a company was registered as a SDVOSB by querying ORCA to verify that the company had certified its SDVOSB status. Thus, Contracting Officers relied on the certifications made in ORCA to determine a concern's eligibility for SDVOSB set-aside contracts.

## Findings

10. On or about March 17, 2010, "Articles of Organization of Limited Liability Company" for HCS LLC were submitted to the West Virginia Secretary of State's Office. The

5

document listed Ruford HAGER, Michael HAGER and William HOYER as members of HCS LLC, a member-managed LLC. The signature page was signed by Ruford HAGER. The West Virginia Secretary of State's website lists the effective date of HCS LLC's organization as March 22, 2010.

11. On April 2, 2010, HCS LLC certified in ORCA that it qualified as an SDVOSB. ORCA captured an internet protocol ("IP") address of 76.26.88.186 when HCS LLC certified its SDVOSB status. Or on about October 1, 2010, your affiant reviewed documents received from Comcast in response to an Inspector General subpoena for subscriber information related to IP address 76.26.88.186. The subscriber name for that IP address came back as "HAGER CONSTRUCTION," with an address of "5192 Braley RD RT 60, Huntington, WV 25705".

12. The HCS LLC certification in ORCA on April 2, 2010, listed the point of contact as "Bruce GOLD," with an e-mail address of "rb1gold@cs.com" and a telephone number listed as 304-402-7885. Based on the investigation and on documents provided by Comcast, your affiant knows Bruce GOLD to be an employee of HAGER CONSTRUCTION and the listed e-mail address and telephone number to be associated with HAGER CONSTRUCTION.

13. On or about June 18, 2010, an "Operating Agreement" for HCS LLC was submitted to the West Virginia Secretary of State's Office. The "Operating Agreement" was signed by Ruford HAGER, Michael HAGER and William HOYER, each of whom was identified as a "Member". A document attached to the operating agreement, entitled "Schedule A," stated that

6

William HOYER had contributed 51% of the capital to HCS LLC in the form of "Good Will - Expertise."

14. On or about July 31, 2010, VA Solicitation # 249-10-IB-0364, New Pan Flu Storage Building at Veterans Affairs Medical Center ("VAMC") Huntington, WV, was posted on the Federal Business Opportunities Website ("FBO Website"). The FBO Website listed the contract as "Set Aside: Service-Disabled Veteran-Owned Small Business".

15. On or about July 31, 2010, Sherri Teeters, Contracting Officer, VAMC Murfreesboro, TN, uploaded a document regarding VA Solicitation # 249-10-IB-0364 to the FBO Website. Included in the 185 page solicitation were details stating that the solicitation was for a SDVOSB. The solicitation explained that, in order to qualify for SDVOSB status, a concern needed to be 51% owned and controlled by a SDV.

16. On or about September 1, 2010, an "Application to Appoint or Change Process, Officers, and/or Addresses" was submitted to the West Virginia Secretary of State's Office. The document removed William HOYER as a member of HCS LLC and added Gary JONES as a member of HCS LLC. The document was signed by Ruford HAGER.

17. On or about September 9, 2010, Ruford HAGER, on behalf of HCS LLC, signed and submitted to the VA a "Solicitation, Offer and Award" (Standard Form 1442) for VA Solicitation # 249-10-IB-0364. After a bid opening was held, HCS LLC was the low bidder on the project with an offer valued at $228,000.00.

18. On or about September 14, 2010, DRS Veteran Enterprises ("DRS"), a SDVOSB, protested the award of VA Solicitation # 249-10-IB-0364 to HCS LLC. DRS alleged that HCS LLC was not controlled by a SDV, but was instead controlled by HAGER CONSTRUCTION, a non-SDVOSB. DRS's protest included evidence showing that HCS LLC and HAGER CONSTRUCTION had the same address, telephone number, fax number and employees (Ruford HAGER, Michael HAGER, Bruce GOLD, Bev JEFFERS and Sean ATKINS).

19. On September 16, 2010, Sherri Teeters notified Sean ATKINS, an alleged employee of HCS LLC, that HCS LLC was ineligible for the award because neither Vet Biz nor ORCA showed appropriate SDV ownership. Additionally, HCS LLC did not acknowledge an amendment to the solicitation when HCS LLC submitted its offer resulting in HCS LLC being deemed ineligible for the solicitation.

20. On September 16, 2010, HCS LLC once again certified in ORCA that it qualified as an SDVOSB. ORCA again captured an IP address of 76.26.88.186 when HCS LLC certified its SDVOSB status. As explained above, your affiant later reviewed documents received from Comcast showing a subscriber name for that IP address as "HAGER CONSTRUCTION," with an address of "5192 Braley RD RT 60, Huntington, WV 25705".

21. The HCS LLC certification in ORCA on September 16, 2010, listed as point of contact "Gary K. JONES," with an e-mail address of "gkjones@hcsconstruct.com" and a telephone number of 304-733-5176. Your affiant, having

8

interviewed Gary JONES, knows that Gary JONES was unaware of the purpose of the ORCA database and did not know how to access or certify the status of HCS LLC in the ORCA database. Moreover, Gary JONES was unaware of the "hcsconstruct.com" e-mail address.

22. On October 18, 2010, your affiant and SA James O'Neill, VA/OIG, interviewed William HOYER, the first alleged SDV member/owner of HCS LLC. When first asked about his (HOYER'S) ownership of HCS LLC, HOYER did not know what your affiant was referring to. HOYER then recalled that he was no longer an owner of HCS LLC because the company had dissolved. HOYER stated that Bruce GOLD (an employee of HAGER CONSTRUCTION), whom HOYER knew from encounters at the Elks Lodge, called HOYER and asked if he (HOYER) wanted to start HCS LLC. The next day, HOYER met with Bruce GOLD, Ruford HAGER and Michael HAGER regarding HCS LLC. HOYER stated he was paid $700 a month for his name. HOYER told GOLD that he knew little of construction. HOYER stated he only signed documents for the company. When HOYER spoke with GOLD about going out and working on projects, GOLD never wanted him to. HOYER stated he only went to the HCS LLC office on eight to ten occasions to sign paperwork. HOYER further stated the number of occasions he went to the HCS LLC office could have been less. HOYER stated he put no money into HCS LLC. (Note: At the time of the interview, HCS LLC had not dissolved. HOYER was replaced as the SDV owner by Gary JONES. HOYER was unaware that HCS LLC was still in operation and that Gary JONES was the new SDV owner.)

23. On or about January 10, 2011, a pre-bid solicitation notice was posted on the FBO Website for VA Solicitation # 249-11-IB-0083, Replace Hot Water Heaters at VAMC Huntington, WV. The FBO Website listed the contract as "Set Aside: Service-Disabled Veteran-Owned Small Business" under Notice Details, General Information. The pre-bid solicitation document stated, in part: "The SDVOSB owner must work full time for and run the day to day business operation and maintain 100% decision making authority".

24. On March 6, 2011, HCS LLC certified in ORCA that it qualified as an SDVOSB. ORCA captured an IP address of 76.26.88.186 when HCS LLC submitted its certification. Or on about May 23, 2011, your affiant reviewed documents received from Comcast in response to an Inspector General subpoena for subscriber information related to IP address 76.26.88.186. The subscriber name for that IP address came back as "HAGER CONSTRUCTION," with an address of "5192 Braley RD RT 60, Huntington, WV 25705".

25. The HCS LLC certification in ORCA on March 6, 2011, listed as point of contact "Gary K. JONES," with an e-mail address of "gkjones@hcsconstruct.com" and a telephone number of 304-733-5176. As explained above, Gary JONES was unaware of the purpose of the ORCA database and did not know how to access or certify the status of HCS LLC in the ORCA database. Moreover, Gary JONES was unaware of the "hcsconstruct.com" e-mail address.

26. On March 8, 2011, HCS LLC submitted its bid for VA Solicitation # 249-11-IB-0083. After a bid opening was

10

held, HCS LLC was the low bidder on the project with an offer valued at $448,900.

27. On April 13, 2011, your affiant and SA Paul Powis interviewed Gary JONES. JONES stated he "had not really done anything with HCS LLC". JONES stated that HCS LLC's bidders are employed and paid by HAGER CONSTRUCTION. JONES stated he did not pay any money to own HCS LLC, had never seen the HCS LLC website, did not know what the ORCA database was and had never certified HCS LLC on the ORCA website. JONES stated that Ruford HAGER asked him (JONES) if he wanted to be partners at VAMC Huntington to do contracts. JONES knew Ruford HAGER needed him to get contracts because he (JONES) is a veteran.

28. On May 25, 2011, your affiant reviewed the HAGER CONSTRUCTION website, located at http://www.hagerconstructionllc.com. The website listed Ruford HAGER as the Owner, Michael HAGER as the Project Superintendent, and Bruce GOLD as the Project Manager.

## Probable Cause

29. This investigation revealed that Ruford HAGER, Michael HAGER and Bruce GOLD conspired to and did form HCS LLC, a company allegedly 51% owned and managed first by SDV William HOYER and later by SDV Gary JONES.

30. The investigation revealed that at all times that HCS LLC operated as an alleged SDVOSB, neither William HOYER nor Gary JONES were involved in the management or daily operations of HCS LLC, meaning that HCS LLC did not

actually qualify as an SDVOSB. Additionally, William HOYER and Gary JONES were not involved in identifying, nor knew how to identify, SDVOSB set-aside solicitations on the FBO Website, and Gary JONES did not know how to access ORCA or certify therein the SDVOSB status of HCS LLC.

31. The investigation revealed that on April 2, 2010, in support of HCS LLC's efforts to obtain SDVOSB set-aside contracts, HCS LLC falsely certified that it was an SDVOSB in ORCA. This certification was false, as William HOYER, the SDV who was affiliated with HCS LLC at that time, did not actually own 51% of and control the management or daily operations of HCS LLC.

32. The investigation revealed that on September 16, 2010, in support of HCS LLC's efforts to obtain SDVOSB set-aside contracts, HCS LLC falsely certified that it was an SDVOSB in ORCA. This certification was false, as Gary JONES, the SDV who was affiliated with HCS LLC at that time and who was listed as the point of contact for the ORCA certification, did not actually own 51% of and control the management or daily operations of HCS LLC. Moreover, Gary JONES did not know how to access or certify HCS LLC's SDVOSB status in ORCA.

33. The investigation revealed that on March 6, 2011, in support of HCS LLC's efforts to obtain SDVOSB set-aside contracts, HCS LLC falsely certified that it was an SDVOSB in ORCA. This certification was false, as Gary JONES, the SDV who was affiliated with HCS LLC at that time and who was listed as the point of contact for the ORCA certification, did not actually own 51% of and control the

management or daily operations of HCS LLC. Moreover, Gary JONES did not know how to access or certify HCS LLC's SDVOSB status in ORCA.

34. Based on my training and experience as a Special Agent with the VA/OIG, your affiant believes probable cause exists to search the offices of HAGER CONSTRUCTION LLC and HCS LLC for business records used in a scheme by HCS LLC to make false statements or representations to the United States, in violation of Title 18 United States Code § 1001. Your affiant further believes that HCS LLC was merely a pass-through company created by the owner and employees of HAGER CONSTRUCTION in an attempt to gain access to SDVOSB set-aside contracts that HAGER CONSTRUCTION would have been ineligible to receive because HAGER CONSTRUCTION was not and is not a SDVOSB. As part of that scheme, your affiant believes that employees of HCS LLC submitted false certifications of HCS LLC's SDVOSB status to ORCA using an IP address associated with the business premises of HAGER CONSTRUCTION.

35. Your affiant is aware that while doing business with the United States Government, companies commonly maintain records for many years. These records include, but are not limited to, documents relating to business operations, finances, licensures, taxes, employee payroll and more. Based on my training and experience, your affiant expects these records to be kept on the business premises. You affiant is aware that on the limited occasions that William HOYER and Gary JONES conducted business for HCS LLC, they did so at the HCS LLC/HAGER CONSTRUCTION office located at 5315 Cherry Lawn Road, Huntington, WV 25705.

36. Your affiant respectfully seeks permission to search and seize records, as described in Attachment B, likely to be found at the offices of HCS LLC and HAGER CONSTRUCTION, 5315 Cherry Lawn Road, Huntington, WV, 25705, in whatever form they are found. (Note: 5192 Braley Road, Huntington, WV, 25705, is also an address used for HCS LLC and HAGER CONSTRUCTION. Your affiant, having conducted surveillance at the location, knows that HCS LLC and HAGER CONSTRUCTION occupy the same building, which interchangeably uses the aforementioned two addresses.)

## Computers and Electronic Storage

37. As described above and in Attachment B, this application seeks permission to search and seize records likely to be found on the premises described in Attachment A, in whatever form they are found. Your affiant has probable cause to believe that computers will be found on the premises of HCS LLC because Gary JONES once took a thumb drive there in order to obtain assistance from an HCS LLC employee with his resume. Moreover, your affiant has probable cause to believe that, in certifying its SDVOSB status to ORCA, employees of HCS LLC used an IP address associated with the premises described in Attachment A. Your affiant submits that if a computer or electronic medium is found on those premises, there is probable cause to believe that business records will be stored in that computer or electronic medium. This is true because, based on my knowledge, training, and experience, your affiant knows that today most businesses store their records on computers and electronic storage media and that businesses

often communicate through email. Thus, the warrant applied for would authorize the seizure of computers and electronic storage media or, potentially, the copying of electronically stored information, pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure.

38. Based on my knowledge, training, and experience, your affiant knows that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

39. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

40. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are

replaced with more recently viewed Internet pages or if a user takes steps to delete them.

41. Based upon my knowledge, training, and experience, your affiant knows that searching for information stored in computers in this case might require the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

    a. The volume of evidence. Storage media can store the equivalent of millions of pages of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and

16

its data on the premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

42. Based on the foregoing, your affiant asks the Court to authorize the agents to proceed as follows, consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure.

    a. Upon securing the premises, agents trained in searching and seizing computer data (the "computer personnel") will make an initial review of any computer or storage medium (collectively, the "computer devices") to determine if the computer devices can be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve the data contained on the computer devices. If the computer devices can be reasonably searched on-site, they will be, and a computer device will be seized only if the search reveals it to contain any data that falls within the list of items to be seized as set forth herein.

    b. If the computer devices cannot reasonably be searched on-site and within a reasonable amount of time, then any computer devices that reasonably appear to contain some or all of the evidence described in the warrant would be imaged, thus permitting its later examination consistent with the warrant. Imaging is

17

the taking of a complete electronic picture of the computer device's data, including all hidden sectors and deleted files. Imaging a computer device permits the agents to obtain an exact copy of the computer's stored data without actually seizing the computer hardware. Based upon my experience, your affiant knows that it is often possible to image computers and storage media onsite.

b. If the agents can successfully image the computer devices on the premises, the agents will not remove any computer devices from the premises. Instead, they will conduct an offsite search for the things described in the warrant and Attachment B from the "mirror image" copy at a later date.

c. If the computer devices cannot be analyzed on the premises and imaging proves impractical, or even impossible for technical reasons, then the agents will seize those components of the computer devices that the agents believe must be seized in order to permit the agents to locate the things described in the warrant at an off-site location. In the event that a computer device is seized and removed from the premises, the government will furnish to the issuing Magistrate Judge in writing, every **14 days** after the warrant is returned, a status update regarding the analysis being conducted. These updates will continue to be submitted until the analysis is complete or until further order of the court. If it is determined that the computer device is contraband because it was used in the furtherance of criminal activity or constitutes fruits of said criminal activity, then the government will report this to the issuing Magistrate

Judge, and will request that such reporting obligations cease and that it be allowed to maintain custody of the computer device. If the computer device is determined not to be contraband or fruits of said criminal activity and is determined not to be otherwise subject to seizure by the government, then the government will return the computer device upon completion of its analysis.

43. Your affiant recognizes that HCS LLC and HAGER CONSTRUCTION may be functioning companies with employees and that a seizure of the companies' computers and electronic media may have the unintended effect of limiting the companies' ability to provide services to their legitimate customers. In response to these concerns, the agents who execute the search anticipate taking the approach outlined in paragraph 42 above in order to minimize the inconvenience to the companies' legitimate customers and to minimize the need to seize hardware and data.

44. I have no reason to believe that the search is likely to result in the seizure of any drafts of publications (such as books, newsletters, Web site postings, etc.) that are unrelated to the search and stored on the target computers. Thus, the search will not implicate the Privacy Protection Act, 42 U.S.C. § 2000aa. I have no reason to believe that the search is likely to result in the seizure of a mail server. Thus, the search will not implicate the Electronic Communications Privacy Act, 18 U.S.C. § 2701.

45. Your affiant respectfully submits that this affidavit supports probable cause for a search warrant authorizing the search of the premises described in Attachment A to search and seize the items described in Attachment B.

Further your affiant sayeth naught.

*Benjamin M. LaBuz*
Benjamin M. LaBuz
Special Agent
Department of Veterans Affairs
Office of the Inspector General


Sworn to before me, and subscribed in my presence, this _____ day of July, 2011.

*[signature]*
CHERYL A. EIFERT
United States Magistrate Judge